Gallagher, J.,
concurring.
{¶ 32} I concur in the majority decision and agree that the General Assembly retained the power to reallocate the tobacco settlement money by enacting 2008 Sub.H.B. No. 544 and 2008 Am.Sub.S.B. No. 192. I write separately to more closely address the issues surrounding the actions of the General Assembly in creating the Tobacco Use Prevention and Cessation Trust Fund and whether such actions created a trust. In my view, the General Assembly arguably intended to create a trust and to irrevocably appropriate funds to that trust for antitobacco efforts. Though the purpose was noble, the efforts were ultimately unsuccessful.
{¶ 33} Under the statutory scheme that was enacted, the Tobacco Use Prevention and Control Foundation was appointed as trustee of the endowment fund. Former R.C. 183.08, 148 Ohio Laws, Part V, 10767, 10785. The general management of the foundation was vested in a board of trustees. Former R.C. 183.04, 148 Ohio Laws, Part V, at 10785. The foundation was to establish and carry out a plan to reduce tobacco use by Ohioans. Former R.C. 183.07, 148 Ohio Laws, Part V, at 10784. Emphasis was to be given to Ohio’s youth and groups disproportionately affected by the use of tobacco. Former R.C. 183.07, 148 Ohio Laws, Part V, at 10784. The endowment fund was in the custody of the treasurer of state, but it was set aside from the state treasury. Former R.C. 183.08(A), 148 Ohio Laws, Part V, at 10785. The foundation was to be self-sustaining. Former R.C. 183.08(B), 148 Ohio Laws, Part V, at 10786. However, even if the General Assembly had intended to permanently commit the funds to antitobacco efforts, *520 the statutory scheme fell short of placing the funds beyond the reach of future legislation.
{¶ 34} The endowment fund was created solely from state funds that were set aside to be administered for the purpose of reducing tobacco use by Ohioans, with an emphasis on certain populations. The funds were public and were to be used for a specified public purpose for the benefit of all Ohioans. Although appellants may have directly benefited from the programs that were created, the enabling statutes did not specify any person or entity as the beneficiary of the funds or create any private property interest. “This key element is lacking in many state funds that set aside money for a specific purpose and are ‘trust funds’ in name only. * * * The existence of named beneficiaries is what transforms the Fund from money set aside for a purpose into a formal trust.” Wisconsin Med. Soc., Inc. v. Morgan, 2010-WI-94, 787 N.W.2d 22, ¶ 69-70. The funds were state funds, and because no protected third-party property interests were created, they were subject to the legislature’s plenary power over state money. See Arizona Farm Bur. Fedn. v. Brewer (Nov. 12, 2010), Ariz.App. No. 1 09-0756, 2010 WL 4542393 at *7. Further, although the funds were placed outside the state treasury and were dedicated to a particular use, the nature of the funds as state money was not altered, and the funds were not removed from legislative control. See A.B.A.T.E. of Illinois, Inc. v. Giannoulias (2010), 401 Ill.App.3d 326, 341 Ill.Dec. 109, 929 N.E.2d 1188.
{¶ 35} I believe that this is not a case where the General Assembly sought to encumber funds and bind future legislatures. Rather, the General Assembly failed to establish a proper trust to place the funds beyond the reach of subsequent legislation. Had a proper trust been created, no two-year encumbrance problem would exist.
{¶ 36} There is no doubt that many Ohioans stood to benefit from the antitobacco programs that were funded by the endowment fund. Though the result may seem unfair to some, the acts of the legislature were permissible and are not constitutionally infirm.
Lundberg Stratton, J., concurs in the foregoing opinion.